$400

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALAN MEIZLIK<br>262 Nelson Road<br>Scarsdale, NY  10583, | : |
| Plaintiff, | :  No.: _18 cv4084_ |
| v. | : |
| SOUTHWEST AIRLINES, INC.<br>2702 Love Field Drive<br>Dallas, TX  75235,<br>  and<br>BOEING COMPANY<br>100 North Riverside Plaza<br>Chicago, IL  60606,<br>  and<br>BOEING COMMERCIAL AIRPLANES<br>1901 Oakesdale Avenue SW<br>Renton, WA  98055,<br>  and<br>CFM INTERNATIONAL, INC.<br>One Neuman Way<br>Cincinnati, OH  45215,<br>  and<br>GE AVIATION, LLC<br>One Neuman Way<br>Cincinnati, OH  45215,<br>  and<br>SAFRAN USA, INC.<br>2201 West Royal Lane<br>Irving, TX  75063, | : |
| Defendants. | : |

FILED

SEP 2 1 2018

KATE BARKMAN, Clerk
By_____JT_____Dep. Clerk

## COMPLAINT

1.     On April 17, 2018, Alan Meizlik boarded Southwest Airlines Flight 1380 at

LaGuardia Airport bound for Dallas, Texas.

2.     As an executive with Johnson & Johnson, Meizlik was used to flying.



3.      He took his unassigned seat on the Boeing 737-700 airplane and settled in for the three-hour flight to Dallas.

4.      He did not know, and had no way of knowing, that he was placing himself in danger by even getting on that plane.

5.      But Southwest Airlines, Inc. knew.

6.      It had known for a long time.

7.      And it did nothing about it.

8.      Just 20 minutes after takeoff, however, Meizlik's life flashed before his eyes.

9.      At approximately 11:00 a.m., the plane's left engine exploded.

10.     Shrapnel from the exploded engine ripped into the plane's fuselage, breaking a window.

11.     At 30,000 feet, an altitude higher than the summit of Mount Everest, the cabin depressurized.

12.     The explosion violently shook Meizlik in his seat.

13.     As he attempted to place his oxygen mask around his head, Meizlik could see that a few rows in front of him another passenger Jennifer Riordan was partially sucked out of the plane.

14.     Other passengers struggled to get Ms. Riordan back inside the plane, however, the forces of a plane traveling at 600 mph were too great for other passengers to save Ms. Riordan from the elements outside of the plane.

15.     As he watched and heard the panic unfold around him, Meizlik's ears began bleeding from the depressurized cabin.

16.     Meizlik sent a text message to his children to say goodbye.

2

17.     The Southwest crew instructed the passengers to close the shades because they believed the rest of the windows on the plane were going to blow out.

18.     He prayed in his seat and believed he was going to die.

19.     Within minutes, the plane then made an emergency landing at the Philadelphia International Airport.

20.     Meizlik, however, suffered significant physical and psychiatric injuries from which he may never recover.

21.     This whole tragic episode for Meizlik and the other 143 passengers and five crew members could have been avoided because Southwest Airlines had specific notice of precisely the same problem almost two years earlier.

22.     On August 27, 2016, the CFM56-7B engine fan blades on a Boeing 737-700 failed on Southwest Airlines Flight 3472 destroying the engine and damaging the plane's fuselage.

23.     This nearly identical event should have sent alarm bells throughout Southwest Airlines' corporate headquarters in Dallas, Texas.

24.     The National Transportation Safety Board found evidence of metal fatigue on the fan blade that had broken off the engine

25.     Southwest Airlines knew or should have known that CFM56-7B engine fan blades on its fleet of Boeing 737s could again fail and that this phenomenon exposed millions of passengers to the risk of catastrophic injury and death.

26.     But Southwest Airlines did nothing about it.

27.     Southwest Airlines boasts on its website, "The mission of Southwest Airlines is dedication to the highest quality of Customer Service delivered with a sense of warmth, friendliness, individual pride, and Company Spirit."

3

28.     For Plaintiff Alan Meizlik, and the other passengers on Southwest Flight 1380, Southwest delivered anything but the "highest quality service."

29.     Accordingly, Plaintiff Alan Meizlik seeks compensatory and punitive damages for the catastrophic injuries set forth more fully herein.

## PARTIES

30.     Plaintiff Alan Meizlik is a citizen and resident of the State of New York.

31.     Defendant Southwest Airlines Company ("Southwest") is a corporation or other jural entity existing under the laws of the State of Texas with its principal place of business located at 2702 Love Field Drive, Dallas, TX 75235.  It is registered with the Pennsylvania Department of State to conduct business in the Commonwealth of Pennsylvania and/or may be served within the Commonwealth of Pennsylvania at Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110.

32.     Defendant the Boeing Company ("Boeing") is a corporation or other jural entity existing under the laws of the State of Delaware with its principal place of business located at 100 N. Riverside Plaza, Chicago, Illinois 60606. It is registered with the Pennsylvania Department of State to conduct business in the Commonwealth of Pennsylvania and/or may be served within the Commonwealth of Pennsylvania at Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110.

33.     Defendant Boeing Commercial Airplanes ("BCA") is a subsidiary of Boeing and is a corporation or other jural entity organized and existing under the laws of the State of Delaware with its principal place of business located 1901 Oakesdale Avenue SW Renton, WA 98055.

34.     Defendant CFM International, Inc. ("CFM") is a corporation existing under the laws of the state of Delaware with its principal place of business located at One Neuman Way,

4

Cincinnati, OH 45215 and does business individually, through a partnership, agency, and/or joint venture as CFM International. CFM maintains a registered agent at The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801.

35.      Defendant GE Aviation, LLC ("GE") is a corporation or other jural entity existing under the laws of the state of Delaware with its principal place of business located at One Neuman Way, Cincinnati, OH45215. GE does business individually, through a partnership, agency, and/or joint venture as CFM International. The registered agent for GE is Business Filings Incorporated, 108 West 13th Street, Wilmington, DE 19801.

36.      Defendant Safran USA, Inc. ("Safran USA") is a Delaware corporation with its principal place of business believed and therefore averred to be located at 2201 West Royal Lane, Irving, Dallas County, Texas 75063. Safran USA does business individually, through a partnership, agency, and/or joint venture as CFM International. The registered agent for Safran USA is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

37.      CFM, GE, and Safran USA are collectively referred to as "the CFM Defendants" when referencing the joint venture, agency, and/or partnership between these entities for the purpose of manufacturing, selling, supporting, and designing commercial aircraft engines.

## JURISDICTION AND VENUE

38.      This Court has jurisdiction over this action pursuant to 28 U.S. C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of costs and interest and complete diversity exists between parties because none of the Defendants' headquarters or principal places of business are in New York where plaintiff is a resident.

5

39. Venue is proper because the air disaster which forms the basis of this action occurred in the Commonwealth of Pennsylvania.

40. Plaintiff sustained injuries when the air disaster occurred in Pennsylvania.

41. Defendants are subject to jurisdiction in the Eastern District of Pennsylvania because one or all of these defendants conduct substantial regular business and earn substantial revenue from business conducted within this district in this District.

42. Each defendant committed torts within or outside of the Commonwealth which caused harm within the Commonwealth, including Plaintiff's as set forth herein.

43. Each defendant maintains sufficient minimum contacts with the Commonwealth of Pennsylvania by systematically, regularly, and continuously conducting business within the Commonwealth of Pennsylvania by availing themselves of business opportunities here.

44. Accordingly, exercising personal jurisdiction over each Defendant is consistent with the Due Process Clause and the United States Supreme Court holdings in *International Shoe Co. v. Washington*, 326 U. S. 310 (1945), *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 477–478 (1985) and their progeny.

## FACTUAL BACKGROUND

45. As set forth above, this case involves the tragic Southwest Airlines Flight 1380 on April 17, 2018 which made an emergency landing in Philadelphia after one of its engines blew apart.

46. Defendant Southwest Airlines in the largest low-cost air carriers in the United States operating in approximately 100 domestic destinations and 10 countries.

6

47.     Defendants CFM, GE, Safran USA, doing business as CFM International, manufactured, designed, and sold the CFM56-7B engines that are installed in certain Boeing 737-700 commercial aircraft.

48.     In 2016, Defendants discovered an inherently dangerous condition existing in the CFM56-7B engines om Southwest Airlines' fleet of Boeing 737-700 aircraft.

49.     As set forth above, on August 27, 2016, Southwest Flight 3472 had an in-flight engine failure in which one of the CFM56-7B engine fan blades failed causing catastrophic damage.

50.     Engine debris struck and damaged the aircraft fuselage.

51.     Post-accident investigation revealed that engine failure was due to fatigue failure of the fan blade of the CFM56-7B engine.

52.     Despite the fact that Defendants had notice the propensity of CFM56-7B engine fan blades to fatigue on Boeing 737-700 aircraft, they did not take any reasonable steps to prevent a reoccurrence.

53.     Instead, the CFM Defendants simply recommended inspections of the fan blades based on hours in service and did not attempt to identify any metallurgical, structural, casting, forging or other design/manufacturing defects in the CFM56-7B engine fan blades.

54.     Moreover, Defendant Southwest did not adequately or properly perform these inspections on other Boeing 737-700 aircraft in its fleet, including the subject aircraft.

55.     Tellingly, the Defendants failed to determine whether CFM56-7B engine fan blades were capable of withstanding the vibratory and/or thermal stresses encountered in normal operational service before continuing to expose passengers on Boeing 737-700 planes to the risk of catastrophic injury or death.

7

56.     On April 17, 2018, Plaintiff boarded Southwest Airlines Flight 1380 at New York-LaGuardia Airport.

57.     At the time Plaintiff purchased his airline ticket, he relied on the relied on the promises, representations, warranties of the defendants regarding their adherence to the highest standards for safety.

56.     Plaintiff specifically entrusted his life, safety and well-being to Southwest Airlines, Boeing and the CFM Defendants.

57.     Plaintiff did not know, and had no way of knowing, of the inherently dangerous condition of CFM56-7B engines.

58.     Had Plaintiff known, he would have made alternative travel arrangements.

59.     Approximately 20 minutes after takeoff from LaGuardia, Flight 1380 was in Pennsylvania airspace when the left CFM56-7B engine suffered a catastrophic uncontained failure of a fan blade.

60.     Engine debris struck the fuselage of the aircraft, shattering a window.

61.     Due to immediate depressurization, Plaintiff was thrown in his seat and suffered a cervical spinal injury.

62.     He noticed that his ears were bleeding bilaterally.

63.     He observed passenger Jennifer Riordan partially sucked through the window as other   passengers risked their lives to pull her back into the aircraft and save her life.

64.     The depressurization caused pandemonium within the plane's cabin and heightened Plaintiff's fear.

65.     Plaintiff believed that he was going to die and began praying.

66.     He sent a text message to his children to say goodbye.

8

67.     Flight 1380 was diverted to Philadelphia International Airport where it made an emergency landing.

68.     As a direct and proximate cause of the events aboard Flight 1380, Plaintiff suffered and continues to suffer, severe personal injuries including but not limited to a cervical spinal injury involving herniations in his C6 and C7 discs with spinal cord impingement, closed head injury, traumatic brain injury, neurological injuries, inner ear injury, bleeding from his ears, confusion, memory loss, photophobia, dizziness and headaches, post-traumatic stress disorder, anxiety, emotional distress and depression.

69.     As a direct and proximate cause of the events aboard Flight 1380, Plaintiff suffered damages for loss of earnings, financial damages, mental, emotional, and physical pain and suffering, loss of enjoyment of life, loss of ability to perform and experience the usual activities of life, loss of earning capacity, past and future medical care and expenses together with damages for physical pain and suffering, and emotional anguish, terror and fright.

70.     Plaintiff further seeks all other available compensatory damages, as well as punitive damages against the Defendants and each of them for their reckless misconduct and conscious disregard for her safety, health, life and wellbeing.

## COUNT I--NEGLIGENCE
### Plaintiff v. Southwest Airlines

71.     The above paragraphs are incorporated herein by reference as if the same were fully set forth herein.

72.     As a common carrier and commercial airline carrier, Southwest Airlines owed a duty of care to its passengers, including Plaintiff, to ensure that the aircraft and engines that it uses in its fleet are airworthy, that all maintenance and inspections necessary to ensure the continuing airworthiness of its fleet is performed in a professional and workmanlike manner.

9

73.     Southwest Airlines owed a duty to Plaintiff to discontinue services and/or warn its passengers of any dangers associated with its aircraft so that they make informed judgments about purchasing services from Southwest or other carriers.

74.     Southwest Airlines breached those duties to Plaintiff.

75.     As an air carrier, Southwest Airlines also had a regulatory obligation to ensure that the aircrafts that it uses in its fleet are airworthy, that all maintenance and inspections necessary to ensure the continuing airworthiness of its fleet is performed in a professional and workmanlike manner.

76.     Southwest Airlines had a regulatory obligation to discontinue services and/or warn its passengers of any dangers associated with its aircraft so that they make informed judgments about purchasing services from Southwest or other.

77.     Southwest Airlines breached those regulatory duties.

78.     Southwest Airlines' breaches of those regulatory duties constitute negligence per se.

79.     Specifically, Defendant Southwest Airlines breached the foregoing duties of care owed to Plaintiff Alan Meizlik as follows:

   a.   Failing to inspect properly the subject engine for signs of metal fatigue on the engine fan blades;
   b.   Failing to maintain properly the subject engine to correct/fix the metal fatigue present on engine fan blades;
   c.   Failing to test properly the subject engine for signs of metal fatigue on the engine fan blades;
   d.   Failing to remove Boeing 737-700 planes with CFM56-7B engines from its fleet to prevent catastrophic failure of the engines internal components;
   e.   Failing to ground all Boeing 737-700 planes with CFM56-7B engines after the in-flight engine failure of Southwest Flight 3472 on August 27, 2016;
   f.   Failing to properly maintain the subject engine to prevent catastrophic failure of its internal components;
   g.   Failing to properly inspect the engine's containment features to ensure that

10

they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

h.     Failing to properly maintain the engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

i.     Failing to conduct a proper pre-flight inspection to identify internal engine components exhibiting signs of impending failure;

j.     Failing to conduct a proper pre-flight inspection to identify metal fatigue on the engine's fan blades;

k.     Failing to conduct a proper pre-flight inspection to ensure the subject engine's containment features were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure

l.     Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components;

m.     Failing to take appropriate and reasonable corrective measures after the in-flight emergency involving Flight 3472 to ensure that similar uncontained engine failures would not occur

n.     Failing to warn Plaintiff that it had not taken appropriate and reasonable corrective measures after the in-flight emergency involving Flight 3472;

o.     Failing to warn that Plaintiff's health, welfare and life were in danger as a result of Southwest Airline's refusal to take appropriate and reasonable corrective measures after the in-flight emergency involving Flight 3472

p.     Failing to warn Plaintiff that the subject aircraft and its engine contained an unsafe condition and/or design or manufacturing defects that had not been rectified after a prior malfunction;

q.     Failing to follow the recommended/mandatory inspection procedures designed to identify impending failure in the subject engine's containment features to ensure that they were suitable, in a condition, and/or appropriate to prevent an uncontained engine failure;

r.     Failing to take appropriate and reasonable measures to ensure that the aircraft engines--used in its fleet, including the subject CFM56-7B, were free of design and/or manufacturing defects rendering it unsafe for flight;

s.     Failing to accelerate the recommended/mandatory inspection procedures designed to identify impending failure of internal engine components;

t.     Failing to take the necessary precautionary measures to remove the subject engine from service, which had an unsafe condition that could cause an in-flight uncontained engine failure;

u.     Failing to ground those aircraft equipped with engines, such as the subject engine, whose product service history showed malfunctions to prevent further catastrophe;

v.     Failing to fulfill regulatory duties to report product defects, service problems, or other matters that affect the safety of flight to regulatory authorities; and

w.     Failing to properly train its employees, servants and/or agents to notice and correct evidence of engine blade fatigue;

80.     As a direct and proximate cause of Defendant Southwest Airlines breaches of duties it owed to Plaintiff, the subject CFM56-7B engine installed on the subject Boeing 737-700 aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered and continues to suffer, severe personal injuries including but not limited to a cervical spinal injury involving herniations in his C6 and C7 discs with spinal cord impingement, closed head injury, traumatic brain injury, neurological injuries, inner ear injury, bleeding from his ears, confusion, memory loss, photophobia, dizziness and headaches, post-traumatic stress disorder, anxiety, emotional distress and depression.

81.     As a direct and proximate cause of Defendant Southwest Airlines breaches of duties it owed to Plaintiff, the subject CFM56-7B engine installed on the subject Boeing 737-700 aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered damages for loss of earnings, financial damages, mental, emotional, and physical pain and suffering, loss of enjoyment of life, loss of ability to perform and experience the usual activities of life, loss of earning capacity, past and future medical care and expenses together with damages for physical pain and suffering, and emotional anguish, terror and fright.

WHEREFORE, Plaintiff Alan Meizlik demands judgment against the Defendants, jointly and severally, for compensatory damages and punitive damages, together with lawful interest thereon and costs of suit, and brings this action to recover the same.

## COUNT II - STRICT LIABILITY
## RESTATEMENT OF TORTS § 402A
**Plaintiff Alan Meizlik v. Defendants Boeing Company, Boeing Commercial Airplanes, CFM International, Inc., GE Aviation LLC and Safran USA, Inc.**

82.     The above paragraphs are incorporated herein by reference as if the same were fully set forth herein.

12

83.     Defendants Boeing Company, Boeing Commercial Airplanes, CFM International, Inc., GE Aviation LLC and Safran USA, Inc, at all times pertinent to this Complaint, were engaged in the design, testing, manufacture, marketing, development, distribution and sale of goods, in particular, the above-noted Boeing 737-700 with the CFM56-7B engine installed within the meaning of §402A of the Restatement (Second) of Torts.

84.     The subject airplane and engine left the possession of Boeing, BCA, CFM, GE and Safran, it was in a defective condition creating risk of harm to Plaintiff.

85.     The defective condition of the above-noted Boeing 737-700 with the CFM56-7B engine includes the following:

        a.     The engine assembly was structurally deficient and otherwise lacked the necessary safety features to ensure that any malfunction of the engine, including the type experienced during Flight 1380, would be contained within the compartment;

        b.     Engine assembly was failed to possess the necessary safety features to contain any internal malfunction of the engine because it was not manufactured according to specification or otherwise improperly constructed;

        c.     The maintenance and inspection instructions concerning the CFM56-7B engine were defective in that they failed to include all procedures and steps necessary to prevent an uncontained engine failure;

        d.     The fan blades used in the subject engine were defectively designed and/or manufactured as they were forged improperly, casted improperly, and/or improperly treated or hardened rendering them unfit for use in the subject aircraft;

        e.     The fan blades used in the subject engine were defectively designed and/or manufactured as they were structurally incapable of withstanding the vibratory, thermal, or other stresses encountered in normal operation of the engine;

        f.     The maintenance and inspection instructions concerning the engine internal components such as fan blades were defective in that they failed to include all procedures and steps necessary to prevent an engine failure or detect an impending engine failure such as the one experienced in Flight 1380;

        g.     The engine was defectively designed because they lacked all necessary warnings to make them safe for use in commercial aircraft operation;

        h.     The engine was defectively designed because it contained unsafe conditions and features rendering it dangerous, susceptible to uncontained failure,

              susceptible to fatigue fractures of the fan blades all of which were reasonably likely to occur between inspection schedules; and

     i.      The engine was defectively designed for reasons that will be developed in the discovery of this matter.

86.     The risks associated with the foregoing defects were so severe that they could cause certain death in a commercial airline disaster that they outweighed any benefit to cost, production, ease of manufacture, or otherwise.

87.     Defendants Boeing, BCA, CFM, GE and Safran caused the incident due to their designing, manufacturing, marketing, distributing, developing, selling and/or supplying the aircraft and engine in a defective condition for which they are strictly liable to the Plaintiff.

88.     This air disaster and Plaintiff's injuries and losses were caused by the Boeing, BCA, CFM, GE and Safran's designing, manufacturing, marketing, distributing, selling and/or supplying the aircraft and engine without proper and adequate warnings to Plaintiff for which they are strictly liable to the Plaintiff.

89.     As a direct and proximate result of the defects of Boeing, BCA, CFM, GE and Safran's product, Plaintiff suffered and continues to suffer, severe personal injuries including but not limited to a cervical spinal injury involving herniations in his C6 and C7 discs with spinal cord impingement, closed head injury, traumatic brain injury, neurological injuries, inner ear injury, bleeding from his ears, confusion, memory loss, photophobia, dizziness and headaches, post-traumatic stress disorder, anxiety, emotional distress and depression.

90.     As a direct and proximate result of the defects of Boeing, BCA, CFM, GE and Safran's product, Plaintiff suffered damages for loss of earnings, financial damages, mental, emotional, and physical pain and suffering, loss of enjoyment of life, loss of ability to perform and experience the usual activities of life, loss of earning capacity, past and future medical care and

expenses together with damages for physical pain and suffering, and emotional anguish, terror and fright.

91.     Accordingly, Defendants Boeing, BCA, CFM, GE and Safran are strictly liable for Plaintiff's losses as set forth above.

WHEREFORE, Plaintiff Alan Meizlik demands judgment against the Defendants, jointly and severally, for compensatory damages and punitive damages, together with lawful interest thereon and costs of suit, and brings this action to recover the same.

## COUNT III – NEGLIGENCE
### Plaintiff Alan Meizlik v. Defendants Boeing Company, Boeing Commercial Airplanes, CFM International, Inc., GE Aviation LLC and Safran USA, Inc.

92.     The above paragraphs are incorporated herein by reference as if the same were fully set forth herein.

93.     Defendants Boeing Company, Boeing Commercial Airplanes, CFM International, Inc., GE Aviation LLC and Safran USA, Inc, at all times pertinent to this Complaint, were the manufacturers, sellers, and designers of commercial aircraft engines including the subject CFM56-7B.

94.     Defendants Boeing, BCA, CFM, GE, and Safran collectively hold themselves out to the public as having a commitment to safety and claim to have adopted the highest safety standards to ensure the safety of the users of their products.

95.     As such, these defendants owed Plaintiff duties of care to ensure that its products were not dangerous, unsafe, unairworthy, or defective and to warn of any dangers that would affect the safety of flight and put users of its products in danger.

96.     In addition to their common law duties of care, Defendants Boeing, BCA, CFM,

GE, and Safran are subject to regulatory duties, the breaches of which constitute negligence per

se.

97.     Defendants Boeing, BCA, CFM, GE, and Safran breached their duties owed to

Plaintiff as follows:

a.      Failing to properly test, design, construct, build, or specify the engine assemblies to ensure that they possess all of the necessary features to be capable of containing an internal engine malfunction such as the one experienced on Flight 1380;

b.      Failing to properly perform the necessary analysis evaluation, failure modes and effects analysis, or other accepted engineering study to assess the safety of the subject engine assembly to contain a failure of the internal components of the subject engine;

c.      Failing to issue proper maintenance instructions for mechanics to ensure the continuing airworthiness of the engine assembly so that it was capable of containing a failure of the internal components of the subject engine;

d.      Failing to issue proper inspection procedures for mechanics to ensure the continuing airworthiness of the engine assembly so that it was capable of containing a failure of the internal components of the subject engine;

e.      Failing to warn users of its product that the engine assembly suffered from design and/or manufacturing defects rendering it unsafe for flight because it was incapable

of containing an internal engine malfunction such as the one experienced on Flight 1380;

f.      Failing to properly test, design, construct, build, or specify test the internal engine components of its aircraft's engines to ensure that they are capable of withstanding the stresses imparted to them to prevent a premature failure;

g.      Failing to properly perform the necessary analysis evaluation, failure modes and effects analysis, or other accepted engineering study to assess the safety of the internal engine components used in the CFM56-7B engine such as its fan blades;

h.      Failing to issue proper maintenance instructions for mechanics to ensure the continuing airworthiness of the internal engine components used in the CFM56-7B engine such as its fan blades;

i.      Failing to issue proper inspection procedures for mechanics to ensure the continuing airworthiness of the internal engine components used in the CFM56-7B engine such as its fan blades;

j.      Failing to warn users of its product that the CFM56-7B internal engine components such as its fan blades suffered from design and/or manufacturing defects rendering them unsafe for flight because they were incapable of withstanding the stresses encountered under normal engine operating conditions;

k.      Failing to properly audit, monitor, evaluate, and ensure that vendors who

16

manufacture, forge, and/or sell, component parts installed in its aircraft, such as the internal components of the CFM56-7B engine which malfunctioned during Flight 1380, to ensure that the products they produce are safe, airworthy, met specifications, and did not contain any features which would cause an engine malfunction;

l.      Failing to properly make the necessary design changes and or decisions to discontinue or postpone service of those engines which potentially and/or in fact did possess inherent design defects in their engines;

m.      Failing to provide the warnings necessary to make the subject engines safe for use in commercial aircraft operation;

n.      Failing to act reasonably, prudently, and/or in accordance with the standard of care in connection with the support, design, sale, manufacture, of the subject engine; and

o.      Failing to act reasonably, prudently, and/or in accordance with the standard of care for reasons to be developed in discovery of this action.

98.      As a direct and proximate cause of the forgoing breaches by Defendants Boeing, BCA, CFM, GE, and Safran of duties it owed to Plaintiff, the subject CFM56-7B engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered and continues to suffer, severe personal injuries including but not limited to a cervical spinal injury involving herniations in his C6 and C7 discs with spinal cord impingement, closed head injury, traumatic brain injury, neurological injuries, inner ear injury, bleeding from his ears, confusion, memory loss, photophobia, dizziness and headaches, post-traumatic stress disorder, anxiety, emotional distress and depression.

99.      As a direct and proximate cause of by Defendants Boeing, BCA, CFM, GE, and Safran of duties it owed to Plaintiff, the subject CFM56-7B engine installed on the subject Boeing 737-700 aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered damages for loss of earnings, financial damages, mental, emotional, and physical pain and suffering, loss of enjoyment of life, loss of ability to perform and experience the usual activities of life, loss of earning capacity, past and future medical care and expenses together with damages for physical pain and suffering, and emotional anguish, terror and fright.

WHEREFORE, Plaintiff Alan Meizlik demands judgment against the Defendants, jointly and severally, for compensatory damages and punitive damages, together with lawful interest thereon and costs of suit, and brings this action to recover the same.

### COUNT IV – BREACH OF EXPRESS AND IMPLIED WARRANTIES
### Plaintiff Alan Meizlik v. Defendants Boeing Company, Boeing Commercial Airplanes, CFM International, Inc., GE Aviation LLC and Safran USA, Inc.

100.    The above paragraphs are incorporated herein by reference as if the same were fully set forth herein.

101.    Defendants Boeing Company, Boeing Commercial Airplanes, CFM International, Inc., GE Aviation LLC and Safran USA, Inc, at all times pertinent to this Complaint, were the manufacturers, sellers, and designers of commercial aircraft engines including the subject CFM56-7B.

102.    These defendants manufactured, sold, and designed the subject aircraft.

103.    Defendants Boeing, BCA, CFM, GE, and Safran warranted expressly and/or impliedly that the aircraft engines were free of material defects, were merchantable and fit for the particular purpose intended, were airworthy, were safe for flight, and fit for use in commercial aircraft.

104.    These warranties ran to Plaintiff as an intended and/or third-party beneficiary.

105.    Defendants Boeing, BCA, CFM, GE, and Safran described and advertised its products including the subject model engine.

106.    Such descriptions, representations, affirmations and advertisements included, but were not limited to, advertising brochures, instructions, manuals, specification sheets and internet-based information.

107.    These descriptions, representations, affirmations and advertisements concerning

the goods and services of Defendants resulted in express warranties that the goods were as described and sold for their intended use.

108.     These descriptions, representations, affirmations, advertisements and express warranties became part of the basis of the bargain of their sale and these warranties ran to Plaintiff upon which Plaintiff relied.

109.     Plaintiff was a member of the class to whom the warranties were intended to protect.

110.     Defendants Boeing, BCA, CFM, GE, and Safran breached the express and implied warranties because:

    a.    The engine assembly was structurally deficient and otherwise lacked the necessary safety features to ensure that any malfunction of the engine, including the type experienced during Flight 1380, would be contained within the compartment;

    b.    The engine assembly lacked necessary safety features to contain any internal malfunction of the engine because it was not manufactured according to specification or otherwise improperly constructed;

    c.    The maintenance and inspection instructions concerning the CFM56-7B engine were defective in that they failed to include all procedures and steps necessary to prevent an uncontained engine failure;

    d.    The fan blades used in the subject engine were defectively designed and/or manufactured as they were forged improperly, casted improperly, and/or improperly treated or hardened rendering them unfit for use in the subject aircraft;

    e.    The fan blades used in the subject engine were defectively designed and/or manufactured because they were structurally incapable of withstanding the vibratory, thermal, or other stresses encountered in normal operation of the engine;

    f.    The maintenance and inspection instructions concerning the engine internal components such as fan blades were defective in that they failed to include all procedures and steps necessary to prevent an engine failure or detect an impending engine failure such as the one experienced in Flight 1380; and

    g.    The engine was defectively designed because it lacked all necessary warnings to make it safe for use in commercial aircraft operation.

111.    As a direct and proximate cause of the forgoing breaches, the subject CFM56-7b engine installed on the subject aircraft experienced a catastrophic uncontained in-flight failure and Plaintiff suffered the injuries and damages described above.

WHEREFORE, Plaintiff Alan Meizlik demands judgment against the Defendants, jointly and severally, for compensatory damages and punitive damages, together with lawful interest thereon and costs of suit, and brings this action to recover the same.

Respectfully submitted,

Joseph L. Messa, Jr., Esquire
Thomas N. Sweeney, Esquire
MESSA & ASSOCIATES, P.C.
123 South 22nd Street
Philadelphia, PA 19103
Telephone: (215) 568-3500
Facsimile: (215) 568-3501

DATED:  September 21, 2018